(January 30, 1904.)

## HENRY v. HERSCHEY.

[75 Pac. 266.]

WRITTEN INSTRUMENT—PAROL EVIDENCE—WHEN ADMISSIBLE.

1. Under the facts and circumstances of this case, *held*, that parol evidence is admissible to show that at the time of the execution of the written instrument one of the conditions specified therein had been previously complied with and fully satisfied.

2. *Further*, *held*, that the admission of intrinsic evidence showing that a condition named in the written instrument had been met by the party upon whom such condition was imposed is not a violation of the general rule which excludes parol evidence tending to vary or contradict the terms of a written contract.

(Syllabus by the court.)

APPEAL from the District Court in and for the County of Bingham. Honorable Joseph C. Rich, Judge.

Action by E. P. Henry against Frank Herschey to recover a balance on the purchase price of four hundred tons of hay. Judgment was entered in favor of plaintiff and defendant appealed. Affirmed.

The facts are stated in the opinion.

Reeves & Boyd, for Appellant.

Is the written instrument a contract and binding on the parties? If it is the contract of the parties, is the testimony admitted by the court properly admissible for any purpose under the law? We admit that a writing clearly unilateral, or lacking the elements of mutuality, is not an enforceable contract. But is the instrument set out herein within that class? We insist that it is not, but that all the necessary elements of mutuality are shown on its face and from the testimony. That an instrument signed by only one party may be the contract of both, we call the court's attention to the case of *Bulwinkle v. Cramer,* 27 S. C. 376, 13 Am. St. Rep. 645, 3 S. E. 776; *Mason v. Decker,* 72 N. Y. 595, 28 Am. Rep. 190. A written instrument, even when signed by but one party, is not unilateral, but binding when acted upon by both parties. (*Bloom v. Hazzard* (Cal.), 37 Pac. 1037; *Dows v. Morse,* 62 Iowa, 231, 17 N. W. 495; *Muscatine Water Co. v. Muscatine Lumber Co.,* 85 Iowa, 112, 39 Am. St. Rep. 284, 52 N. W. 108.) Under the contract set out the law is uniform that, whatever the prior negotiations or discussions may have been between the parties, all parol conversations and understandings are merged in the written instrument, and it is the only evidence admissible. (*Dawson v. Woodhams,* 11 Colo. App. 394, 53 Pac. 238; *Jacobs v. Shenon,* 3 Idaho, 274 (2 Idaho, 1002), 29 Pac. 44.) Neither fraud nor mistake is attempted to be shown in this case, and no uncertainty or ambiguity appears from the writing itself, and, in the absence of these, the rule of evidence is elementary that oral testimony is inadmissible. (*Haskins v. Dern,* 19 Utah, 89, 56 Pac. 953, and cases cited; *Stein v. Fogarty,* 4 Idaho, 702, 43 Pac. 681.)

F. S. Dietrich, for Respondent.

We respectfully submit that *Barghoorn v. Moore,* 6 Idaho, 531, 57 Pac. 265, decided by this court, is directly in point. To be sure the instrument involved in that case did not have at the head of it the word "contract," and is in the form of a receipt at the beginning, instead of at the end, as in the case of exhibit 1 in this record (set out in the opinion); but the provisions contained in the instrument involved in the Barghoorn case are just as clearly agreements and have as many elements of a contract as have the provisions of exhibit 1. The instrument in that case, as set out in the opinion of the court, is as follows:

"Moscow, Idaho, Nov. 29, 1893.

"Received from Mrs. Julia A. Moore note signed by Idaho Builder's Supply Co., dated Aug. 25, '92, due one year, for $1500, at 1-1/4 per cent. Said note left as collateral security to Julia A. Moore, noted. Dated Nov. 8th, '93, due Jan. 1st, 1895. Said note and mortgage to be foreclosed against said I. B. S. Co. and proceeds applied on said note of Julia A. Moore as fast as so collected. Said foreclosure to take place in the next term of court (spring term).

"(Signed) R. S. BROWNE, Pt."

The single question involved in that appeal was as to whether or not parol testimony was properly received contradicting the terms of this instrument. The court says: "We think the evidence was proper. The contract between the parties was not reduced to writing; it was oral. In performing the contract, the defendant transferred the Idaho Builder's Supply Company's note to the bank, and gave her note for $3,000, which she afterward paid. She also to accommodate, without consideration, gave the bank the note sued on in this case, under promise of the president of the bank that it would not be collected, but used solely in making a showing of assets under the United States banking laws. The receipt quoted above was a memorandum signed by only one of the parties, and misrepresented some of the facts relating to the transaction between the parties. Such receipt did not preclude the parties from showing the contract made by them. (See, also, *Lemmon*

*v. Siebert,* 15 Colo. App. 131, 61 Pac. 202; *Anderson v. Portland Flouring Mill Co,* 37 Or. 483, 82 Am. St. Rep. 771, 60 Pac. 839, 50 L. R. A. 235; *Allen v. Tacoma Mill Co.,* 18 Wash. 216, 51 Pac. 372; *Denver Brewing Co. v. Barets,* 9 Colo. App. 341, 48 Pac. 834.)

AILSHIE, J.—The facts of this case as disclosed by the record are substantially as follows: In the fall of 1897 the plaintiff had several stacks of lucerne hay in his field near Idaho Falls, in Bingham county, and, being desirous of selling the same, approached the defendant, who was at the time feeding a large number of sheep in that county, and proposed to sell him this hay. After some conversation over the matter they drove out to the field and the defendant made an examination of the hay and expressed himself as being satisfied with the quality and condition, and offered the plaintiff $2.50 per ton for the same, which proposition was thereupon accepted by the plaintiff. They estimated the hay at four hundred tons. At that time the plaintiff also told the defendant that there was a good feeding ground nearby where he could keep his sheep during the winter and feed them. After an examination of the location defendant concluded that it was a desirable place, and it was agreed that the hay as hauled from the stacks of the proposed feed-yards should be weighed at what was known in the community as Tautphaus' scales, located on the road between the haystacks and feeding grounds. After this agreement the defendant went away; and, while no one is positive, yet it seems that within two days thereafter he returned and found the plaintiff at one of the hotels at Idaho Falls and offered him $20 to release him from the contract. Plaintiff refused to do so, and thereupon defendant paid him $200 on the hay previously purchased, which payment was made upon the basis of an estimate of four hundred tons. After making this payment the defendant took a blank form from his pocket and inserted some words and erased others, saying to plaintiff: "Now, I don't want to enter into any ironclad contract in the sale of this hay," and asked him to sign the memorandum or receipt he had just filled out. Plaintiff thereupon signed the same, which is as follows:

## "HAY CONTRACT.

"Idaho Falls, Idaho, Oct. 14, 1897.

"I hereby contract and agree to sell to Frank Herschey four hundred tons of lucerne hay at $2.50 per ton and agree to weigh the same at Tautphaus' scales; said Frank Herschey as follows will move said hay or have it moved, between November 30th and February 1st; said hay to be of good, merchantable quality; payment to be made as follows: On demand, after weighing, and I hereby acknowledge the receipt of two hundred dollars, the same being 50 cents per ton on the above contract.

"E. P. HENRY."

Plaintiff testified at the trial that he understood this document as a mere receipt for the money paid, and that it was signed by him merely as an acknowledgment of part payment on the hay and that no contract was discussed at that time, and no other contract was made or entered into, and that this payment was made in part performance of the contract made at the time the hay was examined by defendant. There is no substantial difference or dispute as to the facts and circumstances of the execution of this instrument. A few days later the defendant sold and assigned his interest in the contract to one Wright, who thereafter took possession of the hay and tore down all the stacks; baled a portion of it and caused a part, if not all, of the remainder to be hauled away. At any rate, all of the hay was either removed or destroyed and the plaintiff took no further notice of it. No further payment was ever made to plaintiff on account of this contract, notwithstanding the fact that he repeatedly called upon Herschey, the defendant, to pay the balance. Herschey always insisted on referring the plaintiff to his assignee, Wright; while the plaintiff insisted that he had nothing to do with Wright, but rather looked to the defendant, with whom he had contracted. The matter ran along for some time in this condition, and finally this present action was instituted in the district court to recover the balance due in the sum of $800, together with $260 interest.

Upon the trial the plaintiff testified to the facts as above set out. The defendant interposed objections to any parol evidence as to what the contract had been or any of the conditions or circumstances under which it was entered into for the reason that the same had been reduced to writing. At the time the objection was made no written contract was produced, and the plaintiff, although cross-examined at that time concerning any written contract, stated that all the writing which he had seen was merely a receipt for the money paid, and that the receipt might possibly contain some memoranda made at the time, but that he had not seen the same since he signed it. The court overruled the objections and admitted the evidence. On cross-examination of the plaintiff he identified the instrument above set out, and it was thereupon introduced by the defendant.

The principal objection raised by the appellant upon this appeal, and the only one of importance, is the action of the court in admitting parol evidence as to the terms, conditions and circumstances of this contract. This objection really reduces itself still further; as it appears from the record that the only purpose of urging it was to prevent evidence showing that the particular and specific hay bought was that then stacked in plaintiff's fields and examined by defendant. Defendant insists that under the terms of this written instrument he was entitled to "good, merchantable" hay, and that it was afterward discovered that the hay which plaintiff had shown defendant was not such a class and quality of hay. Plaintiff, on the other hand, contends that he sold defendant *this specific hay,* and that defendant examined the same and was satisfied to accept it, and that the contract was made concerning this particular and identical property, and that the same was "good, merchantable" hay at the time the contract was made, and that no further question upon that point could thereafter arise as between the parties to the contract. It has been very ably argued here by counsel for appellant that the instrument admitted in evidence is a complete contract within itself, and that the parol evidence tended to vary or contradict the terms of the written instrument, and that therefore the court erred in

the admission of such parol evidence. In the first place, we think that under the facts and circumstances as disclosed in this case, the instrument introduced is more in the nature of a receipt and memorandum—made *after* the contract had been completed and subject to enforcement—than a complete contract between the parties.

We are also of the opinion that the parol evidence so admitted cannot reasonably be said to vary or contradict the written instrument, but, on the other hand, showed that one of the conditions named in the written instrument had been satisfied by the plaintiff prior to the signing of the same. The evidence in the case fully convinces us that the contract was made with reference to the particular hay examined by the defendant upon the day of their first conversation, and that he was then satisfied with it and contracted with direct reference to that specific property. It appears that the plaintiff was not a hay merchant and was not in the business of buying and selling hay, but was merely seeking a market for the production from his own ranch. The defendant knew that fact and had no reason to believe or expect that the plaintiff would go into the market and buy any other or different class or quality of hay to fill this contract.

For these reasons we think the evidence was clearly admissible for the purpose of showing that the requirement for "good, merchantable" hay named in the written instrument had been satisfied and complied with prior to the signing of that instrument.

The evidence in this case does not fall within the general rule excluding parol evidence varying or contradicting a written contract. While we have not been cited to any adjudicated case where the facts were the same as in the case at bar, still the principle governing the admissibility of evidence under very similar circumstances has often been recognized by the authorities. (See *Bulkley v. Devine*, 127 Ill. 407, 20 N. E. 16, 3 L. R. A. 330; *Kreuzberger v. Wingfield*, 96 Cal. 251, 31 Pac. 109; *Allen v. Tacoma Mill Co.*, 18 Wash. 216, 51 Pac. 372; *Barghoorn v. Moore*, 6 Idaho, 531, 57 Pac. 265; 2 Parsons on Contracts, 550.) There are other reasons why the appellant

could not prevail in this case. He and his assignee, Wright, used and destroyed, or permitted to be used and destroyed, all the hay which plaintiff claims to have sold him. Defendant made no complaint as to the quality of the hay; gave plaintiff no notice of the alleged damaged condition of the hay; never offered to make any further payment; and after using and wasting all this property, he is in no position to be heard complain, at this late date, when he is called upon to pay for the property so received or destroyed.

For the foregoing reasons the judgment of the lower court is affirmed, with costs to the respondent.

Sullivan, C. J., and Stockslager, J., concur.